UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INDUSTRIAL BUILDERS, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>ROBSON HANDLING TECHNOLOGY USA INC. and MATT WILLIAMS, individually,<br><br>        Defendants.<br><br>ROBSON HANDLING TECHNOLOGY USA, INC.,<br><br>        Counterclaimant,<br><br>v.<br><br>INDUSTRIAL BUILDERS, INC.,<br><br>        Counterdefendant. | Case No. 1:23-cv-00499-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' Motion to Dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 18.) The motion seeks to dismiss the civil conspiracy claim, and counts four and five, of the Complaint. The motion is fully briefed. (Dkt. 18, 23, 24.) Having carefully reviewed the submissions and the entire record, the Court finds the facts and

legal arguments relevant to Defendants' motion are adequately presented in the record. Accordingly, in the interest of avoiding delay, and because the decisional process would not be significantly aided by oral argument, the motion will be decided based on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons explained below, the motion will be granted in part and denied in part.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing dismissal of claims pursuant to Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

When a court grants a Rule 12(b)(6) motion to dismiss, a plaintiff is ordinarily entitled to amend the complaint before the action is dismissed. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also* Fed. R. Civ. P. 15(a) ("the court should freely give leave [to amend] when justice so requires."). Rule 15's policy favoring amendment "should be given with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Leave to amend should be withheld, however, if the "amendment: (i) prejudices the opposing party; (ii) is sought in bad faith; (iii) produces an undue delay in litigation; or (iv) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

**MEMORANDUM DECISION AND ORDER - 2**

Generally, the Court may not consider any materials beyond the complaint when ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If the Court considers evidence outside the pleadings, it must convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Here, Defendants request that the Court consider a document entitled "Letter of Intent," because it was expressly referenced in the Complaint. *See* Decl. of Westley, Ex. 1. (Dkt. 18-1, 18-2.) The Complaint references the Letter of Intent ("LOI") at paragraphs 19 – 21. Compl. ¶¶ 19 – 21. (Dkt. 1.) The Court may properly consider the LOI without converting the motion to one under Rule 56.

## BACKGROUND

Industrial Builders, Inc.'s ("Industrial Builders")[1] various business specialties include airport baggage handling systems within the United States. Industrial Builders' owner and president is Dave Erlebach.

Robson Handling Technology USA, Inc. ("Robson USA")[2] is in the business of providing airport baggage handling systems for airports located in the United States. The

---

[1] Industrial Builders is an Idaho corporation with its principal place of business located in Caldwell, Idaho.
[2] Robson USA is a Texas corporation with its principal place of business located in Grapevine, Texas.

MEMORANDUM DECISION AND ORDER - 3

principals of Robson USA include Defendant Matt Williams, its President; Shawn Jones, its Vice President; and Stuart Westley,[3] the Director and General Manager for Robson USA and its parent company, Robson Handling Technology LTD ("Robson UK").

In 2021, Robson USA approached Industrial Builders about doing business together as business partners in the airport baggage handling industry. On or about March 19, 2021, Industrial Builders and Robson USA entered into a Teaming Agreement wherein Robson USA and Industrial Builders agreed they would "work together on an exclusive basis for all aviation projects with an estimated contract value of 5m to 25m" for a period of five years.

Under the Teaming Agreement, the parties agreed that they would work together to bid various projects in the baggage handling industry; that Industrial Builders would serve as the prime contractor for each contract that was awarded; and that Industrial Builders would provide the necessary licensing and bonding. Robson USA would handle "all other Responsibilities for the project." The parties also agreed that "Robson will not bid a project in this value range to another Prime Contractor or take on the Prime Contractor role in a tender unless Industrial Builders decides that they do not want to participate in that tender." After the execution of the Teaming Agreement, Industrial Builders and Robson USA bid on several airport baggage handling projects together, across the United States.

---

[3] Mr. Westley's name has also been spelled "Westly." In his declaration, it is spelled "Westley," so that is the spelling the Court will use.

**MEMORANDUM DECISION AND ORDER - 4**

In February of 2023, Stuart Westley, on behalf of Robson USA and Robson UK, approached Dave Erlebach about Industrial Builders potentially acquiring Robson USA. Westley and Erlebach executed a Letter of Intent ("LOI") on or about February 13, 2023. The LOI reflected International Builders' intentions to acquire Robson USA, and Robson UK's intentions to sell Robson USA to "[e]ither a current entity of Dave Erlebach or a new entity to be formed by Dave Erlebach or one of his affiliated companies." Westley Decl., Ex. 1. (Dkt. 18-2.)[4] The LOI expressly stated the letter was "non-binding," and its provisions were for "informational purposes only," because the prospective transaction required further "negotiation and documentation, including preparing and executing a final agreement."

On February 14, 2023, Robson USA and Industrial Builders executed a confidentiality agreement and agreed that confidential information may be disclosed for purposes of conducting due diligence associated with the acquisition.[5] The Complaint alleges that, after executing the confidentiality agreement, Robson USA and Erlebach began negotiations associated with Industrial Builders' potential acquisition of Robson USA. During negotiations, Erlebach communicated with Jones and Westley regarding the potential terms of Industrial Builders' acquisition of Robson USA. The parties discussed

---

[4] The Complaint incorrectly states that Westley executed the LOI on behalf of Robson USA. *See* Compl. ¶ 21. The LOI was entered into between Buyer, "either a current entity of Dave Erlebach or a new entity to be formed by Dave Erlebach or one of his affiliated companies, and Seller, "Robson Handling Technology LTD," and was signed by Stuart Westley as a representative of Robson Technology LTD (Robson UK). The parties to the LOI indicated that Buyer would be purchasing "Robson Handling Technology USA" (Robson USA).

[5] A copy of the confidentiality agreement was not attached to the Complaint. Accordingly, it is unclear to the Court whether the exchange of confidential information was limited to Robson USA and Industrial Builders, or allowed for the exchange of information to others facilitating the sale of Robson USA.

**MEMORANDUM DECISION AND ORDER - 5**

that Jones would continue to be employed by Industrial Builders or the new company, while Williams would not, such that Robson UK would be obligated to compensate Williams for his equity interest in Robson USA. The terms of the deal were discussed and known by Industrial Builders, Robson USA, and Robson UK, and terms were exchanged among the parties. Williams was not included in these negotiations, and was "generally unaware" of the acquisition until "late July 2023."

In August of 2023, there was a breakdown in the negotiation discussions between Robson USA and Industrial Builders "in part due to Mr. Williams' tortious actions." Upon learning of the potential acquisition and the fact he no longer would be employed by the new entity, Williams encouraged Robson UK and Robson USA to cease negotiations with Industrial Builders related to the acquisition. On September 15, 2023, Jones provided a formal letter of resignation to Robson USA. On September 18, 2023, Robson USA terminated Jones' employment.

In or about September of 2023, Industrial Builders "became concerned that Robson USA was not complying with the terms of the Teaming Agreement," and notified Robson USA of its expectations under the agreement. Industrial Builders accused Robson USA of breaching various provisions of the Teaming Agreement. Compl. ¶¶ 37 – 50.[6] (Dkt. 1.)

On November 13, 2023, Industrial Builders filed their complaint against Robson USA and Matt Williams. The Complaint contains the following claims asserted under

---

[6] Because the breach of contract claim is not challenged, the Court will not delve into the details of the allegations.

**MEMORANDUM DECISION AND ORDER - 6**

Idaho state law: Count One – Declaratory Judgment; Count Two – Breach of Contract; Count Three – Breach of the Implied Covenant of Good Faith and Fair Dealing; Count Four – Tortious Interference with Prospective Economic Advantage; Count Five – Tortious Interference with Contract; Count Six – Promissory Estoppel; Civil Conspiracy; and, Unjust Enrichment.[7] Challenged here are Counts Four, Five, and the Civil Conspiracy claim.

Count Four alleges that, at all relevant times, Robson USA and Williams had knowledge of Industrial Builders' economic expectancy under the Teaming Agreement, and that Robson USA intentionally interfered with Industrial Builders' valid economic expectancy under that agreement. Specifically, Industrial Builders alleges that Robson USA failed to notify Industrial Builders of potential new qualifying baggage handling projects that fell within the scope of the Teaming Agreement.

Industrial Builders alleges also that Williams interfered with the potential acquisition of Robson USA once he obtained knowledge of the same and learned he would not be hired by Industrial Builders or the newly formed company after the acquisition. Industrial Builders claims Williams made false allegations regarding Industrial Builders and Jones to discourage the acquisition from moving forward, and encouraged Robson USA and Robson UK to terminate Jones' employment and cease negotiations related to the potential acquisition. As a result of Williams' false

---

[7] Jurisdiction arises under 23 U.S.C. § 1332.

**MEMORANDUM DECISION AND ORDER - 7**

representations regarding Industrial Builders and Jones, the Complaint alleges that Robson USA has indicated it does not intend to proceed with the sale.

Count Five asserts that Williams, "as President of Robson USA, was aware of the Teaming Agreement and Robson USA's intentions to be acquired by [Industrial Builders]." Industrial Builders claims Williams tortiously interfered with the Teaming Agreement and ongoing negotiations between Industrial Builders and Robson USA by directing, inducing, or causing Robson USA to cease negotiations for the acquisition. Williams "baselessly alleged [] Jones provided confidential or proprietary information" to Industrial Builders outside of what was shared during the due diligence period. As a result of the alleged conduct of Williams, Industrial Builders contends: (1) Robson USA has expressed that it is no longer interested in being acquired by Industrial Builders; and, (2) Robson USA has breached the Teaming Agreement by obtaining bids for baggage handling contracts that fall within the scope of the Teaming Agreement, and without providing notice to Industrial Builders as required by the agreement.

Finally, Industrial Builders alleges that Williams "intentionally and maliciously conspired with Robson USA and other agents and/or employees of Robson USA" to injure and damage the business relationship with Industrial Builders. Specifically, Industrial Builders claims Williams and Robson USA acted in concert to: (1) pursue baggage handling projects that fell within the scope of the Teaming Agreement without

notifying Industrial Builders; (2) unlawfully terminate Jones' employment;[8] and, (3) break down the negotiations related to the potential acquisition of Robson USA by Industrial Builders.

Defendants contend dismissal of the two tortious interference claims and the conspiracy claim is warranted because Defendants cannot interfere with their own contract or engage in a conspiracy with itself. Alternatively, Defendants argue Industrial Builders' claims of conspiracy to interfere with the LOI should be dismissed because the LOI was not a binding contract, and therefore Industrial Builders had no economic expectancy arising from it. Industrial Builders argues that it sufficiently plead its claim for tortious interference with prospective economic advantage, because the Complaint alleges facts that Williams' conduct was outside the scope of his employment as an agent for Robson USA. Industrial Builders defends also its claim for civil conspiracy.

## ANALYSIS

1.  **Counts Four and Five – Tortious Interference with Prospective Economic Advantage and Tortious Interference with Contract[9]**

To establish a claim for intentional interference with a prospective economic advantage, Plaintiff must show: (1) the existence of a valid economic expectancy; (2)

---

[8] The Complaint avers that Robson USA and Williams alleged Jones was acting as an agent for Industrial Builders without Robson USA's knowledge during the course of negotiations for Robson USA's acquisition, when Robson USA was aware of and encouraged Jones to negotiate with Industrial Builders on behalf of Robson USA. The Court infers from context that this allegation was the underlying basis for the termination of Jones' employment.

[9] Under Idaho law, the torts of intentional interference with prospective economic advantage and intentional interference with contract are similar, and cases and commentary addressing the two torts "often apply interchangeably for proving the common elements." *Cantwell v. City of Boise*, 191 P.3d 205, 216 n. 5 (Idaho 2008).

**MEMORANDUM DECISION AND ORDER - 9**

knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself; and (5) resulting damage to the plaintiff whose expectancy has been disrupted. *Ice Castles, LLC v. LaBelle Lake Ice Palace*, LLC, 409 F. Supp. 3d 912, 924 (D. Idaho 2019) (citing *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1081 (Idaho 2010)).

To establish that the intentional interference resulting in injury was wrongful, a plaintiff may plead either: "(1) the defendant had an improper objective or purpose to harm the plaintiff; or (2) the defendant used a wrongful means to cause injury to the prospective business relationship." *Wesco Autobody Supply*, 243 P.3d at 1081 (citing *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841 (Idaho 1991)). "The mere pursuit of one's own business purposes is not sufficient to support an inference of an improper motive to harm the plaintiff." *Syringa Networks, LLC v. Idaho Dep't. of Admin.*, 305 P.3d 499, 509 (Idaho 2013). Further, an enforceable contract need not be shown to exist, just a valid economic expectancy. *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1081 (Idaho 2010) (citing *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 177 P.3d 955, 964 (Idaho 2008)).

A claim of tortious interference with contract requires proof of four elements: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach. *Truckstop.net, L.L.C. v. Sprint Corp.*, No. CV-05-138-S-BLW, 2005 WL 8166195, at *4 (D. Idaho July 28, 2005) (citing *Ostrander v. Farm Bureau*

**MEMORANDUM DECISION AND ORDER - 10**

*Mut. Ins. Co.*, 851 P.2d 946, 950 (Idaho 1993)). *See also Barlow v. Int'l Harvester Co.*, 522 P.2d 1102, 1114 (Idaho 1974) (citing *Long v. Newby*, 488 P.2d 719, 722 (Alaska 1971)). "'Malice in the sense of ill-will is not required' to establish a prima facie case." *Barlow*, 522 P.2d at 1114 (citing *Long*, 488 P.2d at 722).

Idaho law is well established that a party cannot tortiously interfere with its own contract. *Ostrander*, 851 P.2d at 950. *See also Flsmidth Spokane, Inc. v. Emerson*, No. 1:13-CV-00490-EJL, 2014 WL 2711790, at *9 (D. Idaho June 16, 2014) (alleged interferer must be a third party to the contractual relationship); *Truckstop.net, L.L.C. v. Sprint Corp.*, No. CV-05-138-S-BLW, 2005 WL 8166195, at *5 (D. Idaho July 28, 2005) (a party to a contract may not be held liable for interference with that same contract); *Taylor v. McNichols*, 149 Idaho 826, 844, 243 P.3d 642, 660 (2010) (it is factually impossible for a party to tortiously interfere with that party's own contract); *BECO Const. Co. v. J-U-B Engineers, Inc.*, 184 P.3d 844, 849 (Idaho 2008) ("[A] claim for tortious interference with contractual relations requires proof that the defendant is a stranger to the contract with which the defendant allegedly interfered and to the business relationship giving rise to the contract."); *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 390 (Idaho 2005) (claim for tortious interference with contract requires interference by a third party).

Similarly, to state a claim for intentional interference with a prospective economic advantage, a defendant must interfere with a relationship between the plaintiff and a third party. *In re King* (*JB Constr., Inc. v. King*), 403 B.R. 86, 94 (Bankr. D. Idaho 2009) (citing *Highland Enterprises, Inc. v. Barker*, 986 P.2d 996, 1004 (Idaho 1999)). *See also*

**MEMORANDUM DECISION AND ORDER  - 11**

*Pleas v. City of Seattle*, 774 P.2d 1158, 1161 (Wa. 1989) (noting that there must be knowledge by the interferer of the existence of a business expectancy); *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1369 (Or. 1978) (explaining the tort requires an allegation that the defendant caused a third person not to enter into or continue a business relation with another).[10]

Furthermore, the actions of an agent are the actions of the corporation; an agent is only liable for actions which are outside its scope of duty to the corporation. *Ostrander*, 851 P.2d at 950; *BECO Const. Co.*, 184 P.3d at 849.[11] Thus, if a defendant's actions fall within the scope of his or her authority as an agent, there is no third party to the contract, and the plaintiff cannot state a claim. *See Leon v. Boise State Univ.*, 870 P.2d 1324, 1329 (Idaho 1994) (dismissing tortious interference with contract claim when complaint did not allege that the defendant took any actions outside her capacity as department chair for Boise State University). *See also AMX Int'l, Inc. v. Battelle Energy All., LLC*, No. CV-09-210-E-BLW, 2009 WL 5064561, at *3 (D. Idaho Dec. 16, 2009) (defendant is not a "stranger to the contract" and cannot be held liable on a claim of tortious interference if the defendant is meaningfully and substantially involved in the contractual arrangement or business relationship at issue). *Cf. Corbett v. Bison Boys, LLC*, 4:20-cv-353-BLW, 2021 WL 780899 at *4 (D. Idaho Mar. 1, 2021) (finding complaint plausibly stated that

---

[10] In *Highland Enterprises, Inc.*, the court agreed with the way the tort of interference with prospective economic advantage was discussed in *Pleas v. City of Seattle* and in *Top Service Body Shop, Inc.*, and adopted the tort as outlined in those cases. 986 P.2d at 1004.
[11] Industrial Builders cited several authorities from outside of Idaho for this same proposition. Mem. at 10. (Dkt. 23.) However, Idaho law is in accord that an agent may only be liable for actions outside the scope of his or her duty to the principal.

**MEMORANDUM DECISION AND ORDER - 12**

defendant, a member of Bison Boys LLC, was not acting within the scope of any agency relationship with the LLC); *In re Jaques* (*T Street LLC v. Jaques*), 615 B.R. 608, 628 (Bankr. D. Idaho 2020) (noting that an LLC member's actions are "undertaken outside the normal performance of his or her duties" and are thus out of the scope of the limited liability protection when "the member is not acting within the bounds of her duties or obligations as a member of the company, but in his or her own self-interest").[12]

Notably, Industrial Builders has raised no argument defending its claim for tortious interference with contract in light of Defendants' arguments. There are two components to Industrial Builders' claim asserted in Count Five: (1) interference with the Teaming Agreement; and, (2) interference with the LOI by directing, inducing, or causing Robson USA to not continue negotiations for the acquisition. Compl. ¶ 97. Concerning the Teaming Agreement, Count Five appears to reframe the claim for Breach of Contract. Compare Compl. ¶ 69 with ¶ 97(e). Further, Industrial Builders does not allege that Williams took any actions outside his capacity as President of Robson USA. As Robson USA's president, Williams presumably had the authority to direct the course of Robson USA's business. *See Stivers v. Sidney Min*. Co., 208 P.2d 795, 797 (Idaho 1949) (A corporation "has no eyes, ears, or understanding save through its agents. The president is considered the head of the corporation…."). Accordingly, there was no third party. As for the LOI, to state a claim a contract must exist. The clear, unambiguous

---

[12] In contrast to corporations, Idaho Code § 30-25-301(a) provides that "[a] member is not an agent of a limited liability company solely by reason of being a member."

**MEMORANDUM DECISION AND ORDER - 13**

terms of the LOI disavow that it constitutes a contract.[13] For all of the above reasons, Industrial Builders cannot state a claim for tortious interference with contract. *Ostrander*, 851 P.2d at 950.

The Court reaches a slightly different conclusion, however, with respect to Industrial Builder's claim for tortious interference with prospective economic advantage. Again, there are two components to this claim: (1) Robson USA's alleged intentional interference with Industrial Builders' economic expectancy in its relationships with prospective clients and loss of opportunities under the Teaming Agreement; and, (2) Williams' interference with Industrial Builders' acquisition of Robson USA. Similar to its analysis above, Robson USA is not a stranger to the Teaming Agreement. Industrial Builders has not alleged that Williams was acting outside the scope of his authority as President of Robson USA when he decided certain projects did not fall within the scope of the Teaming Agreement. Again, the claim appears merely to reiterate the claim for breach of contract. Compare Compl. ¶¶ 80 – 84 with ¶¶ 60 – 63.

However, the Court finds Industrial Builders has plausibly stated a claim vis-à-vis its allegations concerning its acquisition of Robson USA. Notably, the LOI was executed by Robson UK, the Seller, and a current or new entity of Dave Erlebach, Buyer. Westley executed the LOI as a representative of Robson UK. The Complaint alleges that Williams interfered with Industrial Builders' potential acquisition of Robson USA. The Complaint

---

[13] Paragraph 7 clearly indicates that the LOI is a "non-binding agreement;" "does not require either party to proceed to the completion of a binding final Agreement"; neither party was required to proceed to the completion of a binding final agreement; and the parties were not "contractually bound to the sale…." (Dkt. 18-2 at 6.)

**MEMORANDUM DECISION AND ORDER - 14**

does not contain any indication that Williams had an agency relationship with Robson UK, or otherwise was a party to the LOI. In fact, the Complaint alleges the opposite – that Williams was kept out of the loop and sought to sabotage the deal once he learned he would lose his position with Robson USA upon Industrial Builders' acquisition of the company. The Complaint further alleges that Williams made false representations regarding Industrial Builders and Jones to induce Industrial Builders to cease further negotiations, causing damages. Accordingly, based upon the above allegations, the Court finds Industrial Builders has plausibly stated facts in support of a claim for tortious interference with prospective economic advantage as it relates to the LOI.

## 2.     Civil Conspiracy

"A civil conspiracy that gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *Tricore Invs., LLC v. Est. of Warren through Warren*, 485 P.3d 92, 121 (Idaho 2021) (citing *McPheters v. Maile*, 138 Idaho 391, 395, 64 P.3d 317, 321 (2003)). A civil conspiracy is not, on its own, a claim for relief. *Id*. Rather, a civil conspiracy "is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself." *McPheters*, 64 P.3d at 321. Conspiracy is only material for the purpose of "making all of the defendants liable for each individual act of the other defendants, if the conspiracy is established." *Tricore Invs., LLC*, 485 P.3d at 121 (citing *Dahlquist v. Mattson*, 40 Idaho 378, 393, 233 P. 883, 887 (1925)).

"By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to

MEMORANDUM DECISION AND ORDER - 15

plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Tricore Invs., LLC*, 485 P.3d at 121 (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994)). Thus, if the underlying tort is tortious interference, and the defendant owes no duty to itself, it cannot commit that tort; accordingly, it is also unable to engage in a conspiracy with itself to commit that same tort. *Id*. (citing *Ostrander*, 851 P.2d at 950 ("The general rule is that a party cannot tortiously interfere with its own contract.")). Further, a conspiracy requires independent entities capable of conspiring, and thus, a corporation cannot conspire with its officers or agents. *Afton Energy, Inc. v. Idaho Power Co.*, 834 P.2d 850, 857 (1992).

Industrial Builders' civil conspiracy claim fails, because it has not identified independent entities capable of conspiring; and secondarily, because Robson USA through its agent, Williams, cannot conspire with itself to interfere with the Teaming Agreement. The Complaint asserts Williams acted in concert with Robson USA. Passing mention is given to "other agents" of Robson USA, which does not save the conspiracy claim. Nor does the briefing indicate that there were any actors other than Robson USA and Williams. Mem. at 14 – 15. (Dkt. 23.) Industrial Builders has therefore not identified any independent entities allegedly acting in concert to interfere with the Teaming Agreement or the negotiations underlying the LOI. Moreover, under Idaho law, it is factually impossible for a party – in this case Robson USA – to tortiously interfere with its own contract – the Teaming Agreement. Consequently, the Complaint fails to allege sufficient facts to establish a cause of action for civil conspiracy.

**MEMORANDUM DECISION AND ORDER - 16**

## CONCLUSION

Consistent with the Court's discussion, the Civil Conspiracy claim and Count 5, the claim for tortious interference with contract, will be dismissed. Count 4, the claim for tortious interference with prospective economic advantage, will be partially dismissed. *See* Compl. ¶¶ 78 – 85 (related to the Teaming Agreement). Only the allegations concerning Williams' interference with Industrial Builders' acquisition of Robson USA may remain, given the LOI was entered into between Erlebach and Robson UK. *See* Compl. ¶¶ 86 – 93 (related to interference with Industrial Builders' acquisition of Robson USA). Leave to amend will not be given, as any amendment would be futile in light of the legal authorities discussed above.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) Defendants' Motion to Dismiss (Dkt. 18) is **GRANTED IN PART AND DENIED IN PART.**

2) The allegations concerning interference with the Teaming Agreement in Count 4, Count 5 in its entirety, and Section V, the claim for Civil Conspiracy, are **DISMISSED** with prejudice.

Dated: **April 02, 2024**

Candy W. Dale
United States Magistrate Judge